### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| ATUL BISARIA,<br>Individually,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>HTL (HILTON) EXISTING FRANCHISE<br>HOLDING, LLC, d/b/a HILTON HOTELS<br>CORPORATION, A DELAWARE LIMITED<br>LIABILITY CORPORATION, BLACKROCK<br>FINANCIAL MANAGEMENT, INC., A NEW<br>YORK CORPORATION, AND REED SMITH,<br>LLP, A DELAWARE LIMITED LIABILITY<br>PARTNERSHIP,<br><br>　　　　　Defendants. | CIVIL DIVISION<br><br>Case No. 10-CV-81215 WPD |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION OF BLACK ROCK FINANCIAL MANAGEMENT, INC. TO DISMISS COMPLAINT

Thomas A. Dye (FL Bar No. 335207)
Dean A. Morande (FL Bar No. 807001)
CARLTON FIELDS
CityPlace Tower
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida  33401-6350
Phone: 561.659.7070
Facsimile: 561.659.7368
E-mail: tadye@carltonfields.com
　　　　dmorande@carltonfields.com

Robert P. Simons (*Pro hac vice* admission
pending)
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222-2716
Telephone: 412.288.3131
Facsimile:  412.288.3063
E-mail: rsimons@reedsmith.com


Counsel for Black Rock Financial
Management, Inc.

## <u>TABLE OF CONTENTS</u>

**Page**

I.     FACTUAL BACKGROUND ................................................................................1

     A.    The Purchase Agreement and the Franchise Agreement ..........................1

     B.    The Refinancing................................................................................2

     C.    Assignment of the Loan Documents......................................................3

     D.    Shubh's Defaults, the First Amendment, and the Stipulated Order.......................3

     E.    Hilton's Termination of the Franchise Agreement .................................4

     F.    The Bankruptcy Case .........................................................................5

     G.    The Complaint ...................................................................................5

II.    ARGUMENT ...............................................................................................6

A.    The Complaint Should Be Dismissed With Prejudice.........................................6

     1)    The Complaint Fails for Lack of Standing. .....................................6

     2)    The Complaint Fails to State a Claim upon which Relief May Be Granted.......................................................................................9

           a.    Breach of Implied Covenant of Good Faith and Fair Dealing.......................................................................10

           b.    Tortious Interference with Business Relations .............................14

     B.    The Complaint Should Be Dismissed Due to Improper Venue............................16

III.   CONCLUSION............................................................................................18

# TABLE OF AUTHORITIES

## Cases

31 Foster Children v. Bush,
   329 F.3d 1255 (11th Cir. 2003) .................................................................................. 6

511 W. 232nd Owners Corp. v. Jennifer Realty Co.,
   773 N.E.2d 496 (N.Y. 2002) .................................................................................... 12

Alan's of Atlanta, Inc. v. Minolta Corp.,
   903 F.2d 1414 (11th Cir. 1990) ......................................................................... 12, 13

Arctic Contractors, Inc. v. State,
   573 P.2d 1385 (Alaska 1978) .................................................................................... 8

Ashcroft v. Iqbal,
   ___ U.S. ___, 129 S.Ct. 1937 (2009)). ...................................................................... 9

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007) .................................................................................................. 9

Bennett v. Spear,
   520 U.S. 154 (1997) .................................................................................................. 6

Brooks v. Blue Cross & Blue Shield of Florida, Inc.,
   116 F.3d 1364 (11th Cir. 1997) .............................................................................. 10

Centurion Air Cargo, Inc. v. United Parcel Serv. Co.,
   420 F.3d 1146 (11th Cir. 2005) .............................................................................. 13

Century-Maxim Constr. Corp. v. One Bryant Park, LLC,
   2009 WL 1218895 (N.Y. Sup. Ct. Apr. 7, 2009) .................................................... 11

Daewoo Motor Am., Inc. v. General Motors Corp.,
   459 F.3d 1249 (11th Cir. 2006) .............................................................................. 10

Dalton v. Educ. Testing Serv.,
   663 N.E.2d 289 (N.Y. 1995) .................................................................................... 11

Davis v. Fed. Election Comm'n,
   ___ U.S. ___, 128 S.Ct. 2759 (2008) ........................................................................ 6

Day v. Taylor,
   400 F.3d 1272 (11th Cir. 2005) .............................................................................. 10

Finley v. Takisaki,
    2006 WL 1169794 (W.D. Wash. Apr. 28, 2006)........................................................ 8

First Commercial Bank, N.A. v. Walker,
    969 S.W.2d 146 (Ark. 1998)............................................................................................ 8

Forty Exchange Co. v. Cohen,
    479 N.Y.S.2d 628 (N.Y. Civ. Ct. 1984)...................................................................... 15

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,
    528 U.S. 167 (2000)......................................................................................................... 6

FW/PBS, Inc. v. Dallas,
    493 U.S. 215 (1990)......................................................................................................... 6

Garfield v. Suntrust Bank,
    477 F.Supp.2d 1181 (S.D. Fla. Nov. 28, 2006) ............................................................ 8

Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,
    428 N.Y.S.2d 628 (N.Y. 1980) ................................................................................... 15

Horne v. Flores,
    ___ U.S. ___, 129 S.Ct. 2579 (2009)............................................................................ 6

Hudson Valley Bank, N.A. v. Banxcorp,
    2010 WL 3516076 (N.Y. Sup. Ct. Sept. 7, 2010)....................................................... 14

In re BH S & B Holdings LLC,
    420 B.R. 112 (Bankr. S.D.N.Y. 2009).......................................................................... 7

In re Biscayne Bay Lofts, LLC,
    2010 WL 3282598 (Bankr. S.D. Fla. Aug. 19, 2010)................................................... 8

In re Icarus Holding, LLC,
    391 F.3d 1315 (11th Cir. 2004) ..................................................................................... 8

In re Kindred,
    2009 WL 1788401 (Bankr. M.D. Fla. June 5, 2009)................................................... 10

In re Real Mktg. Svcs., LLC,
    309 B.R. 783 (S.D. Cal. 2004)....................................................................................... 7

In re Wincopia Farms, LP,
    2009 WL 801733 (Bankr. D. Md. Mar. 25, 2009)........................................................ 8

Interboro Packaging Corp. v. Fulton County Schs.,
    2006 WL 2850433 (N.D. Ga. Oct. 2, 2006) ........................................................ 13

Intercoastal Realty, Inc. v. Tracy,
    706 F.Supp.2d 1325 (S.D. Fla. Apr. 16, 2010) .................................................. 13

Kronos, Inc. v. AVX Corp.,
    612 N.E.2d 289 (N.Y. 1993) ........................................................................... 16

La Grasta v. First Union Sec., Inc.,
    358 F.3d 840 (11th Cir. 2004) ........................................................................ 10

Lama Holding Co. v. Smith Barney Inc.,
    668 N.E.2d 1370 (N.Y. 1996) .................................................................. 15, 16

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) ......................................................................................... 6

Mandarin Trading Ltd. v. Wildenstein,
    884 N.Y.S.2d 47 (N.Y. App. Div. 2009) ......................................................... 11

Mays v. Citibank, N.A.,
    2005 WL 6111610  (S.D. Fla. Apr. 1, 2005) ................................................... 10

Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,
    716 F. Supp. 1504 (S.D.N.Y. June 1, 1989) ................................................... 12

Murphy v. Am. Home Prods. Corp.,
    448 N.E.2d 86 (N.Y. 1983) ............................................................................ 11

Parker v. Wendy's Int'l, Inc.,
    365 F.3d 1268 (11th Cir. 2004) ........................................................................ 8

Rowe v. Great Atl. & Pac. Tea Co.,
    385 N.E.2d 566 (N.Y. 1978) ........................................................................... 11

S.J. Groves & Sons Co. v. Fulton County,
    920 F.2d 752 (11th Cir. 1991) .......................................................................... 6

Schorr v. Guardian Life Ins. Co. of Am.,
    843 N.Y.S.2d 24 (N.Y. App. Div. 2007) ......................................................... 11

State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada,
    374 F.3d 158 (2d Cir. 2004).......................................................................... 13

Taylor v. Meecorp Capital Mkts., LLC,
   2010 WL 2600709 (3d Cir. June 30, 2010) ................................................................ 8

Teachers Ins. & Annuity Ass'n of Am. v. Wometco Enters.,
   833 F.Supp. 344 (S.D.N.Y. Sept. 22, 1993) ...................................................... 13, 14

Temp-Way Corp. v. Continental Bank,
   139 B.R. 299 (E.D.Pa. 1992) ........................................................................................ 8

Turkmen v. Ashcroft,
   589 F.3d 542 (2d Cir. 2009) .......................................................................................... 9

U.S. v. Jolly,
   102 F.3d 46 (2d Cir. 1996) .......................................................................................... 12

Ulysses I & Co. v. Feldstein,
   906 N.Y.S.2d 380 (N.Y. App. Div. 2010) .................................................................. 16

Walstad v. Norwest Bank of Great Falls,
   783 P.2d 1325 (Mont. 1989) .......................................................................................... 8

White Plains Coat & Apron Co., Inc. v. Cintas Corp.,
   867 N.E.2d 381 (N.Y. 2007) ...................................................................................... 15

Whitney Nat'l Bank v. SDC Communities, Inc.,
   2010 WL 1270266 (M.D. Fla. Apr. 1, 2010) ................................................................ 8

Zakresky v. Graduate School of Figurative Art of New York Academy of Arts, 2009 WL
   2870054 (N.Y. Sup. Ct. Sept. 8, 2009) ...................................................................... 14

**Statutes**

11 U.S.C. §§ 101 et seq. .................................................................................................... 5

28 U.S.C. § 1391(a) ........................................................................................................ 17

28 U.S.C. § 1404 .............................................................................................................. 18

**Rules**

Fed.R.Civ.P. 12(b)(6) ........................................................................................................ 9

Black Rock Financial Management, Inc. ("Black Rock"), by and through its counsel, submits this Memorandum of Law in Support of its Motion to Dismiss Complaint.

1.      As discussed more fully below, this Honorable Court should dismiss the Complaint with prejudice because (i) Atul Bisaria ("Bisaria") lacks standing to assert the claims set forth in the Complaint and (ii) the Complaint fails to state a claim upon which relief can be granted.

2.      This Court should also dismiss the Complaint because venue is improper in the Southern District of Florida.

## I.      FACTUAL BACKGROUND

3.      Bisaria formed a Florida limited liability company, Shubh Hotels Pittsburgh, LLC ("Shubh"), a single purpose entity, for the purpose of acquiring the "Pittsburgh Hilton" (the "Hotel").  See Compl. at ¶ 9.

4.      The Hotel is located in the Gateway Center in downtown Pittsburgh, Pennsylvania.  See Compl. at ¶ 7.

### A.      The Purchase Agreement and the Franchise Agreement

5.      On May 19, 2006, Shubh purchased the Hotel pursuant to an Agreement of Purchase and Sale (the "Purchase Agreement").  See Compl. at ¶ 9.

6.      Pursuant to the Purchase Agreement, on May 18, 2006, Shubh and Hilton Inns, Inc. ("Hilton Inns"), a subsidiary of Hilton Hotels Corporation ("Hilton"), entered into the Franchise License Agreement (the "Franchise Agreement").  See Compl. at ¶ 13; Franchise Agreement (Ex. B to Compl.) at p. 1.

7.      The Franchise Agreement provided for Hilton Inns' right to terminate the Franchise Agreement "immediately upon notice" to Shubh following any of a number of

breaches of the agreement, including in the event Shubh "[g]enerally fails to pay its debts as they become due or admits in writing its inability to pay its debts." See Franchise Agreement (Ex. B to Compl.) at § 14(b)(2)(a), p. 20.

**B.    The Refinancing**

8.    On August 17, 2007, Shubh refinanced the Hotel pursuant to a Loan Agreement dated August 17, 2007 (the "Loan Agreement") between Shubh and Column Financial, Inc. ("Column"). See Compl. at ¶ 16. The refinancing increased Shubh's debt relating to the Hotel (the "Loan") to Forty Nine Million Six Hundred Thousand Dollars ($49,600,000). See Compl. at ¶ 16.

9.    The Loan Agreement set forth certain events that constituted events of default under the Loan Agreement. See Loan Agreement (Ex. C to Compl.) at § 8.1(a), pp. 81-83. Upon the occurrence of an event of default, Column "may take such action, without notice or demand, that [Column] deems advisable to protect and enforce its rights against [Shubh] and in and to the [Hotel]", such as "declaring the Debt to be immediately due and payable." See Loan Agreement (Ex. C to Compl.) at § 8.1(b), p. 83.

10.    Shubh's obligations under the Loan Agreement included its "establish[ing] and maintain[ing] . . . segregated" accounts in trust for Column's benefit, in which it would deposit, *inter alia*, all rents received with respect to the Hotel. See Loan Agreement (Ex. C to Compl.) at § 2.5.1, p. 33 (establishing "lockbox account" into which rents would be deposited); Loan Agreement (Ex. C to Compl.) at § 2.5.2, p. 34 (establishing "cash management account" into which other funds would be deposited).

11.    The Loan Agreement is governed by New York law. See Loan Agreement (Ex. C to Compl.) at § 10.3(a), p. 93.

### C.   Assignment of the Loan Documents

12.   On or about August 29, 2007, Column assigned to Carbon Capital II Real Estate CDO 2005-I, Ltd. (the "Lender") the Loan Agreement and related mortgage on the Hotel pursuant to a Loan Sale Agreement (the "Loan Sale Agreement"). See First Amendment to Loan Agreement (Ex. E to Compl.) dated January 14, 2010, at p. 1; Assignment of Mortgage and Security Agreement (Ex. D to Compl.).

### D.   Shubh's Defaults, the First Amendment, and the Stipulated Order

13.   As of January 14, 2010, Shubh, Bisaria and the Lender executed the First Amendment to Loan Agreement (the "First Amendment"). See Compl. at ¶ 24; Ex. E to the Compl.

14.   The First Amendment is governed by New York law. See First Amendment (Ex. E to Compl.) at § 4.7, p. 23.

15.   On July 21, 2010, Shubh filed an action in the Court of Common Pleas of Allegheny County, Pennsylvania against, *inter alia*, the Lender. In that litigation, the Lender, Black Rock, Shubh, and Bisaria ultimately entered into a Stipulated Order dated July 23, 2010 (the "Stipulated Order").

16.   A true and correct copy of the Stipulated Order is attached hereto as Exhibit 1.

17.   In the Stipulated Order, Shubh acknowledged a plethora of defaults. See Exhibit 1 to Stipulated Order (Ex. 1) at ¶ (a)(i)-(x). Shubh also agreed, among other things, to take many remedial actions with respect to its events of default and inaccurate monthly budgets. See Stipulated Order (Ex. 1) at ¶¶ (l) and (n), pp. 4-5. In exchange, the Lender agreed to rescind its acceleration of the Loan and to advance certain sums to Shubh from the segregated accounts to pay certain tax obligations. See Stipulated Order (Ex. 1) at ¶¶ (g), (h) and (k), pp. 1-2.

18.     Shubh released any and all claims as of July 23, 2010, against Lender, Black Rock and their attorneys (i.e., Reed Smith).  See Stipulated Order (Ex. 1) at ¶ (i), p. 3.

19.     The Stipulated Order further provided that Shubh and Bisaria "shall pay an amount equal to all out-of-pocket costs, reasonable fees and expenses of the Lender Parties (including . . . all reasonable fees and costs of counsel for the Lender Parties) pursuant to Section 10.13 of the Loan Agreement.  In accordance with Section 10.13 of the Loan Agreement, Lender Parties shall have the right and option to pay all of Lender Parties' costs, fees and expenses out of the [lockbox account]."  See Stipulated Order (Ex. 1) at § 1(o), p. 6.

**E.     Hilton's Termination of the Franchise Agreement**

20.     On September 1, 2010, Hilton sent Shubh a letter (the "Acknowledgment of Termination"), terminating the Franchise Agreement because (i) Shubh failed to complete its property renovation plan, (ii) Shubh received unacceptable scores on its evaluations, (iii) Shubh acknowledged in the Stipulated Order that it was delinquent in the payment of debts owing to the Commonwealth of Pennsylvania, Department of Revenue and to the Treasurer of Allegheny County for certain taxes, (iv) judgments in excess of $500,000 had been entered against Shubh, and (v) negative publicity relating to Shubh and its business associates adversely affected Hilton's reputation.  See Acknowledgment of Termination (Ex. F to Compl.) at pp. 1-2.

21.     In the Complaint, Bisaria does not dispute that Shubh was in default under the Franchise Agreement for each of the reasons asserted by Hilton. [1]

---

[1] Bisaria asserts that Hilton "terminated its franchise agreement declaring Shubh Pittsburgh in violation of its covenants to renovate the property."  See Complaint at ¶ 43(b), p. 13.  Bisaria fails to recognize the other defaults upon which Hilton terminated the Franchise Agreement.  Bisaria, although he ignores those defaults, does not deny the existence of those defaults.

     **F.**      **The Bankruptcy Case**

     22.     On September 7, 2010, Shubh filed a voluntary petition for relief under Chapter

11 of 11 U.S.C. §§ 101 et seq. (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court

for the Western District of Pennsylvania (the "<u>Bankruptcy Court</u>").  Shubh's bankruptcy case

(the "<u>Bankruptcy Case</u>") is currently pending under Case No. 10-26337-JAD.

     **G.**      **The Complaint**

     23.     On October 14, 2010, Bisaria filed the Complaint, commencing the above-

referenced civil action.

     24.     In the Complaint, Bisaria asserts two claims for relief against Black Rock.

Specifically, Bisaria asserts claims against Black Rock for (i) Breach of the Implied Covenant of

Good Faith and Fair Dealing and (ii) Tortuous [sic] Interference with Advantages [sic] Business

Relationships.  <u>See</u> Compl. at ¶¶ 50-63, pp. 15-17.  Specifically, Bisaria alleges:

> BLACKROCK breached the terms of its own loan agreement with
> [Shubh] in as much as it encouraged HILTON to declare a default
> in HILTON's Franchise Agreement. . . .
>
> In reaching it [sic] agreement with HILTON, BLACKROCK
> breached its implied covenant of good faith and fair dealing with
> [Shubh] and BISARIA.

<u>See</u> Compl. at ¶¶ 51-52, p. 15.  Bisaria also alleges:

> BLACKROCK [tortiously] interfered with BISARIA'S and
> [Shubh's] existing business relationship with HILTON when it
> encouraged HILTON to declare [Shubh] in default, terminate it
> [sic] relationship, and that HILTON would be assured of regaining
> its franchise relationship with the property.

<u>See</u> Compl. at ¶ 57, pp. 16-17.

II.     **ARGUMENT**

25.     The Complaint should be dismissed with prejudice as to Black Rock because (i) Bisaria lacks standing and (ii) the Complaint fails to state a claim upon which relief may be granted.  Alternatively, the Complaint should be dismissed because venue is improper in the Southern District of Florida.

A.     **The Complaint Should Be Dismissed With Prejudice.**

1)     **The Complaint Fails for Lack of Standing.**

26.     Bisaria lacks standing to bring the claims asserted in the Complaint.

27.     The United States Constitution, Art. III, § 2, limits the federal judicial power to the resolution of "cases and controversies."  Davis v. Fed. Election Comm'n, ___ U.S. ___, 128 S.Ct. 2759, 2768 (2008); Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180 (2000); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  One element of the "case-or-controversy" requirement is that a plaintiff must establish that it has standing to sue. See Horne v. Flores, ___ U.S. ___, 129 S.Ct. 2579, 2592 (2009) (citing Lujan, 504 U.S. at 560).[2]  Thus, standing is a prerequisite to a suit in federal court.  See S.J. Groves & Sons Co. v. Fulton County, 920 F.2d 752, 757 (11th Cir. 1991).

28.     Bisaria bears the burden of proving his standing to assert the claims set forth in the Complaint.  See 31 Foster Children v. Bush, 329 F.3d 1255, 1263 (11th Cir. 2003) (citing Bennett v. Spear, 520 U.S. 154, 167-68 (1997)).

29.     In the Complaint, Bisaria alleges that "BISARIA Was Shubh Pittsburgh."  See Compl. at ¶ 12, p. 4.  Bisaria bases that dubious assertion on the allegation that he "funded the

---

[2] A federal court has "an obligation" to examine its own jurisdiction.  See FW/PBS, Inc. v. Dallas, 493 U.S. 215, 230-31 (1990).

acquisition" of the Hotel and that he and "his immediate family were the sole members of Shubh Pittsburgh." <u>See</u> Compl. at ¶ 12, p. 4.

30.     As a matter of law, however, Bisaria is wrong:  Bisaria is <u>not</u> Shubh, and the fact that he financed a portion of the purchase price or otherwise invested capital in Shubh does not make him Shubh.

31.     Under Florida law, "the corporate form is sacrosanct." <u>In re BH S & B Holdings LLC</u>, 420 B.R. 112, 133 & n.5 (Bankr. S.D.N.Y. 2009) (applying, *inter alia*, Florida law).  "With regard to [LLCs], members of an LLC hold no direct ownership interest in the company's assets and therefore are not directly injured when the company suffers an improper deprivation of those assets." <u>In re Real Mktg. Svcs., LLC</u>, 309 B.R. 783, 788 (S.D. Cal. 2004).

32.     Neither Bisaria's status as an officer or member of Shubh nor his status as guarantor confers Bisaria with standing to assert claims held by Shubh.

33.     District Judge Lenard rejected LLC members' attempt to assert direct, individual claims against a lender for actions relating to an LLC:

> Further, the Court agrees with Defendant that Plaintiffs' allegations of direct losses and damages to Nolte and Garfield as a result of Defendant's purported conduct do not establish that SunTrust had any duties to Plaintiffs individually, or that SunTrust is otherwise liable to Plaintiffs individually.  Although Plaintiffs appear to contend that SunTrust is liable to them as individuals because "specific communications between the Plaintiffs and the Defendant" occurred . . ., they offer no legal support for this contention, and the Court is not aware of any authority that would allow Plaintiffs, as individuals, to hold SunTrust liable for damages to either Garfield or Nolte under these circumstances.  Moreover, the "specific communications" alleged by Plaintiffs, like the claims set forth in the Complaint, occurred solely by virtue of the TSC [an LLC] accounts that were held at SunTrust, and because of the actions allegedly taken by SunTrust with respect to those accounts. . . .  As a result, Plaintiffs lack standing as individuals to bring the claims against SunTrust as set forth in the Complaint, and thus, the Court agrees that the Complaint must be dismissed.

Garfield v. Suntrust Bank, 477 F.Supp.2d 1181, 1186 (S.D. Fla. Nov. 28, 2006); In re Biscayne

Bay Lofts, LLC, 2010 WL 3282598, at *2 (Bankr. S.D. Fla. Aug. 19, 2010) ("A review of

Florida law unequivocally establishes that equity (even if direct) and guarantors have no standing

to assert causes of action owned by their corporation where their corporation directly suffers the

alleged injuries."); Whitney Nat'l Bank v. SDC Communities, Inc., 2010 WL 1270266, at *3

(M.D. Fla. Apr. 1, 2010) ("[G]uarantors of a corporation's debt, even if those guarantors are also

stockholders, do not have standing to bring an action if the only harm suffered is derivative of

the harm the corporation suffered." (quotation omitted)).[3]

     34.    Thus, Bisaria cannot assert in his own name a cause of action that belongs to

Shubh. Bisaria lacks standing to assert claims that belong to Shubh.

     35.    Moreover, any causes of action that belong to Shubh are property of its

bankruptcy estate, not Bisaria.  See Parker v. Wendy's Int'l, Inc., 365 F.3d 1268, 1272 (11th Cir.

2004) (prepetition causes of action are property of the bankruptcy estate); In re Icarus Holding,

LLC, 391 F.3d 1315, 1319 (11th Cir. 2004) (bankruptcy estate "includes legal causes of action

the debtor had against others at the commencement of the bankruptcy case").

---

[3] See also, e.g., Taylor v. Meecorp Capital Mkts., LLC, 2010 WL 2600709, at *2 (3d Cir. June 30, 2010) ("We agree with the District Court's conclusion and reasoning that, as an officer and member of Neptune and as a guarantor of the loan commitment agreement between Neptune and Meecorp, Taylor lacked standing under New Jersey law to sue individually for wrongs allegedly done to his company."); In re Wincopia Farms, LP, 2009 WL 801733, at *10 (Bankr. D. Md. Mar. 25, 2009) ("[M]ere execution on a guarantee does not give a guarantor standing to sue for harm that the creditor of the guaranteed debt allegedly caused to the borrower."); Finley v. Takisaki, 2006 WL 1169794, at *2-*3 (W.D. Wash. Apr. 28, 2006) (holding that, under Washington law, LLC members lacked standing because their claimed loss derived solely from their membership in the LLC); Temp-Way Corp. v. Continental Bank, 139 B.R. 299, 317 (E.D.Pa. 1992) ("[I]t is generally accepted that guarantors of a corporation's debt, even if those guarantors are also stockholders, do not have standing to bring an action if the only harm suffered is derivative of the harm the corporation suffered."); Arctic Contractors, Inc. v. State, 573 P.2d 1385, 1387 (Alaska 1978) ("To permit [guarantor] to recover affirmatively on the same counterclaims for wrongs allegedly inflicted upon the corporation would undercut the statutory provision and would contravene the principles governing both sureties and corporations."); Walstad v. Norwest Bank of Great Falls, 783 P.2d 1325, 1327 (Mont. 1989) (guarantor could not sue lender absent independent duty to guarantor); First Commercial Bank, N.A. v. Walker, 969 S.W.2d 146, 152 (Ark. 1998) (guarantor could not pursue borrower's right of action).

36.     For the foregoing reasons, Bisaria lacks standing to assert the claims set forth in the Complaint.  To the extent (if any) that any claims exist (and have not been released), those claims are property of Shubh's bankruptcy estate.  Therefore, this Court should dismiss the Complaint with prejudice.

>     **2)     The Complaint Fails to State a Claim upon which Relief May Be Granted.**

37.     The Complaint also fails to state a claim against Black Rock upon which relief may be granted.  For that reason, the Complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  <u>See</u> Fed.R.Civ.P. 12(b)(6) (providing for dismissal of civil action "failure to state a claim upon which relief can be granted").

38.     To state a claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  In order to survive a motion to dismiss a complaint, the complaint must plead "enough facts to state a claim to relief that is plausible on its face."  <u>Id.</u> at 570.  A claim for relief "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Turkmen v. Ashcroft</u>, 589 F.3d 542, 546 (2d Cir. 2009) (quoting <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009)).

39.     A court is not bound to accept as true legal conclusions couched as factual allegations.  <u>See</u> <u>Iqbal</u>, 129 S.Ct. at 1950-51 (citing <u>Twombly</u>, 550 U.S. at 555).  Only a complaint that states a plausible claim for relief survives a motion to dismiss.  <u>Id.</u> at 1950.

40.     In ruling on a motion to dismiss, the Court may consider any documents attached to a complaint or otherwise central to a plaintiff's claims even if the documents are not attached to the complaint.  <u>See</u> <u>Daewoo Motor Am., Inc. v. General Motors Corp.</u>, 459 F.3d 1249, 1266

n.11 (11th Cir. 2006) (citing <u>Day v. Taylor</u>, 400 F.3d 1272, 1275-76 (11th Cir. 2005)); <u>see</u> <u>also</u>

<u>Brooks v. Blue Cross & Blue Shield of Florida, Inc.</u>, 116 F.3d 1364, 1369 (11th Cir. 1997)

("[W]here the plaintiff refers to certain documents in the complaint and those documents are

central to the plaintiff's claim, then the Court may consider the documents part of the

pleadings.").

     41.     The court may also take judicial notice of, and consider, public records, including

pleadings in other cases.  <u>See</u> <u>Mays v. Citibank, N.A.</u>, 2005 WL 6111610, at *8 (S.D. Fla.

Apr. 1, 2005); <u>see</u> <u>also</u> <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004)

(on motion to dismiss, court considers "well-pleaded factual allegations, documents central to or

referenced in the complaint, and matters judicially noticed"); <u>In re Kindred</u>, 2009 WL 1788401,

at *3 n.2 (Bankr. M.D. Fla. June 5, 2009) ("When determining motions to dismiss, a court may

take judicial notice of the public record including documents filed and the record in other judicial

proceedings." (quotation omitted)).

     **a.**     **Breach of Implied Covenant of Good Faith and Fair Dealing**

     42.     In its claim for relief titled "Breach of Implied Covenant of Good Faith and Fair

Dealing," Bisaria asserts that Black Rock "breached the terms of its own loan agreement" with

Shubh.  <u>See</u> Compl. at ¶ 51, p. 15.

     43.     Bisaria, however, cannot point to any provision of the Loan Agreement that Black

Rock or the Lender breached.  Instead, Bisaria generally asserts that "BLACKROCK breached

its implied covenant of good faith and fair dealing." <u>See</u> Compl. at ¶ 52, p. 15.

     44.     Under New York law, Bisaria's claim for an alleged breach of the implied

covenant of good faith and fair dealing fails because Black Rock was <u>not</u> a party to the Loan

Agreement, the Loan Sale Agreement or the First Amendment.  <u>See</u> <u>Mandarin Trading Ltd. v.</u>

Wildenstein, 884 N.Y.S.2d 47, 51 (N.Y. App. Div. 2009) ("Because the existence of a valid and

binding contract [between plaintiff and defendant] is not alleged, the complaint fails to state a

cause of action for . . . breach of the implied covenant of good faith and fair dealing." (citations

omitted)); Schorr v. Guardian Life Ins. Co. of Am., 843 N.Y.S.2d 24, 25 (N.Y. App. Div. 2007)

("Plaintiff failed to plead properly a claim for breach of the implied covenant of good faith and

fair dealing since he did not demonstrate the existence of a valid contract from which such a duty

would arise.").[4]

45.     Even if Bisaria could assert a claim for breach of the implied covenant of good

faith and fair dealing against a non-party to the contract, Bisaria still fails to state a claim as a

matter of New York law.

46.     Under New York law, "[e]ncompassed within the implied obligation of each

promisor to exercise good faith are 'any promises which a reasonable person in the position of

the promisee would be justified in understanding were included.'"  Dalton v. Educ. Testing

Serv., 663 N.E.2d 289, 291 (N.Y. 1995) (quoting Rowe v. Great Atl. & Pac. Tea Co., 385 N.E.2d

566, 569 (N.Y. 1978)); see Century-Maxim Constr. Corp. v. One Bryant Park, LLC, 2009 WL

1218895, at *24 (N.Y. Sup. Ct. Apr. 7, 2009).

47.     The duty of good faith and fair dealing "is not without limits, and no obligation

can be implied that 'would be inconsistent with other terms of the contractual relationship.'"

Dalton, 663 N.E.2d at 291-92 (quoting Murphy v. Am. Home Prods. Corp., 448 N.E.2d 86, 91

(N.Y. 1983)); Century-Maxim, 2009 WL 1218895, at *24 ("'[T]he duties of good faith and fair

---

[4] To the extent the Complaint appears to allege a breach of the implied covenant of good faith and fair dealing against Black Rock because of the termination of the Franchise Agreement, this claim fails for the same reason stated above.  Neither Black Rock nor the Lender was a party to the Franchise Agreement.

dealing do not imply obligations inconsistent with other terms of the contractual relationship.'" (quoting 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 773 N.E.2d 496, 500 (N.Y. 2002))).

48.     Bisaria contends as follows: "Breach of the Loan Agreement: BLACKROCK breached the terms of its own loan agreement with Shubh Pittsburgh in as much as it encouraged HILTON to declare a default in HILTON'S Franchise Agreement." See Compl. at ¶ 51, p. 15.

49.     Bisaria fails to allege any provision of the Loan Agreement that was "breached" by the alleged conduct.  Bisaria makes no attempt to tether the claim to any provision in the Loan Agreement.  Black Rock cannot even hazard a guess regarding what provision of the Loan Agreement was violated by the alleged conduct.[5]  Thus, the Complaint fails to state a claim for breach of the implied duty of good faith and fair dealing because Bisaria fails to tie Black Rock's alleged conduct to any provision of the Loan Agreement.  See U.S. v. Jolly, 102 F.3d 46, 48 (2d Cir. 1996) (holding that, under New York law, "[w]here debt instruments are concerned, even a contract claim asserting a breach of an implied covenant of good faith by the debtor firm must relate to an explicit contractual provision of the loan" (citing Metropolitan Life Ins. Co. v. RJR Nabisco, Inc., 716 F. Supp. 1504, 1521-22 (S.D.N.Y. June 1, 1989)); see also Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1429 (11th Cir. 1990) (opining that, under Georgia law, implied covenant of good faith and fair dealing "is not an independent contract term" but is, rather, "a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms de facto when performance is maintained de jure" (citation omitted)); Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1151 (11th Cir.

---

[5] In support of its allegation that Black Rock "declared a default . . . under the mortgage documents with the loss of the franchise agreement," Bisaria relies upon correspondence from Black Rock's counsel (Reed Smith) dated July 20, 2010.  See Compl. at ¶ 43(b), p. 13 (citing Ex. I to Compl.).  Bisaria waived all claims arising on or before July 23, 2010.  See Stipulated Order (Ex. 1) at ¶ (i), p. 3 (providing that Shubh and Bisaria released all claims as of July 23, 2010, against Lender, Black Rock and their attorneys).

2005) (under Florida law, implied covenant of good faith and fair dealing "attaches to the performance of a specific contractual obligation"); Intercoastal Realty, Inc. v. Tracy, 706 F.Supp.2d 1325, 1335-36 (S.D. Fla. Apr. 16, 2010) (same); Interboro Packaging Corp. v. Fulton County Schs., 2006 WL 2850433, at *4 (N.D. Ga. Oct. 2, 2006) ("[A]llegations of breach of the implied duty of good faith and fair dealing not tied to a specific contract provision are not actionable." (citing Alan's of Atlanta, Inc., 903 F.2d at 1429)), aff'd, 221 F.App'x 964 (11th Cir. Apr. 16, 2007).

      50.    To the extent (if any) that Bisaria purports to challenge the Lender's exercise of its remedies under the Loan Agreement, Bisaria has failed to allege that Black Rock engaged in any wrongful conduct regarding the exercise of those remedies.  Moreover, as a matter of law, Bisaria could not allege a claim relating to the exercise of the Lender's remedies.  Specifically, the Lender was entitled to exercise its remedies as it deemed appropriate "in its sole discretion." See Loan Agreement (Ex. C to Compl.) at § 8.2(a), p. 83 (Lender's remedies "shall be cumulative and concurrent and may be pursued independently, singularly, successively, together or otherwise, at such time and in such order as Lender may determine in its sole discretion"); at § 10.2, p. 92 (Lender's sole discretion shall be "final and conclusive").  Accordingly, any implied duty of good faith and fair dealing claim regarding the Lender's exercise of its remedies is baseless.  See State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 170 (2d Cir. 2004) ("There are no express restrictions in the applicable negative covenants that limit State Street Bank's right to refuse to consent to any such sale in the event of a default. Accordingly, the bank had the right under the Credit Agreements to 'withhold consent for any reason or no reason.'" (quoting Teachers Ins. & Annuity Ass'n of Am. v. Wometco Enters., 833 F.Supp. 344, 349 (S.D.N.Y. Sept. 22, 1993)); Hudson Valley Bank, N.A. v. Banxcorp, 2010 WL

3516076, at *9 (N.Y. Sup. Ct. Sept. 7, 2010) ("Since the Agreement gave Plaintiff the right to terminate its financing at any time in its sole discretion, the Court cannot re-write the Agreement in order to create an obligation on the part of Plaintiff to continue providing financing at all, or under the original terms of the Agreement, indefinitely . . . .  Stated differently, Defendants have no enforceable expectation that Plaintiff would use good faith in deciding whether to terminate financing."); Zakresky v. Graduate School of Figurative Art of New York Academy of Arts, 2009 WL 2870054, at *5 (N.Y. Sup. Ct. Sept. 8, 2009) ("[T]he implied covenant of good faith and fair dealing does not impose obligations that would be inconsistent with the express terms of the contract itself."); Teachers Ins. & Annuity Ass'n of Am., 833 F.Supp. at 349 ("[I]n the absence of explicit contractual language stating that a party may not unreasonably withhold consent, parties may withhold consent for any reason or no reason, and ... no implied obligation to act in good faith exists to limit that choice.").

### b.   Tortious Interference with Business Relations

51.    Bisaria also asserts a claim against Black Rock for tortiously interfering with Bisaris's business relationship with Hilton.[6]  See Compl. at ¶ 57, pp. 16-17.

52.    Bisaria, however, was not the Hilton franchisee.  Shubh was the Hilton franchisee. Thus, Bisaria has failed to state a claim for tortious interference.

53.    Even if Bisaria could assert a claim on behalf of Shubh (which he cannot), the Complaint fails to allege a claim against Black Rock for tortious interference because Bisaria fails to allege a breach of the Franchise agreement.

---

[6] Bisaria couples this claim with an allegation that Hilton tortiously interfered with Shubh's business relationship with Black Rock.  See Compl. at ¶ 58, p. 17.

54.     Under New York law, to allege tortious interference with an existing contract, such as the Franchise Agreement, "the plaintiff must show the existence of its valid contract with a third party, defendant's knowledge of that contract, defendant's *intentional and improper procuring of a breach*, and damages."  White Plains Coat & Apron Co., Inc. v. Cintas Corp., 867 N.E.2d 381, 383 (N.Y. 2007) (emphasis added) (citing Lama Holding Co. v. Smith Barney Inc., 668 N.E.2d 1370, 1375 (N.Y. 1996)); see also Forty Exchange Co. v. Cohen, 479 N.Y.S.2d 628, 633 (N.Y. Civ. Ct. 1984) (citing Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 428 N.Y.S.2d 628 (N.Y. 1980)).

55.     Bisaria does not allege that Black Rock procured Hilton's breach of the Franchise Agreement (let alone that Black Rock intentionally and improperly did so).

56.     Bisaria alleges that Black Rock encouraged Hilton "to declare Shubh . . . in default" and terminate the franchise.  See Compl. at ¶ 57, pp. 16-17.  Nowhere, however, does Bisaria deny that Shubh was in default of the Franchise Agreement or that Hilton breached the Franchise Agreement by declaring Shubh to be in default.

57.     In fact, the documents upon which Bisaria relies in the Complaint demonstrate his inability to allege that Hilton breached the Franchise Agreement by declaring Shubh to be in default.  Specifically, Shubh failed to pay taxes when due.  See Stipulated Order at ¶ 2(g) and (h).  Such payment defaults constitute a breach of the Franchise Agreement.  See Franchise Agreement (Ex. B to Compl.) at §§ 6(a)(16) and 14(b)(2)(a) (providing that failure to pay debts when due is a breach of the Franchise Agreement).

58.     Bisaria does not deny any of the other defaults set forth in Hilton's Acknowledgment of Termination.

59.     Thus, Bisaria cannot allege, let alone demonstrate, that Hilton breached the Franchise Agreement by declaring Shubh to be in default.

60.     Absent an alleged breach of the Franchise Agreement by Hilton, there can be no claim against Black Rock for tortious interference.   Therefore, as a matter of law, Bisaria has failed to assert a claim upon which relief may be granted.  See also Ulysses I & Co. v. Feldstein, 906 N.Y.S.2d 380, 382 (N.Y. App. Div. 2010) ("[T]he Court of Appeals has consistently held that an actual breach is required to sustain a cause of action for tortious interference with contract."); Lama Holding Co., 668 N.E.2d at 1376 (claim fails because, inter alia, there is no allegation third party "in fact breached its contract").

61.     The Complaint also fails to state a tortious interference claim because Bisaria does not allege any damages resulting from Black Rock's conduct.  Bisaria alleges damages only from Hilton's alleged conduct.  See Compl. at ¶ 59, p. 17 ("As a result of HILTON'S conduct, BISARIA is damaged.").

62.     Having alleged no damages, Bisaria has no claim for tortious interference.  See Kronos, Inc. v. AVX Corp., 612 N.E.2d 289, 294 (N.Y. 1993) ("[N]o cause of action for tortious inducement to breach a contract arises until actual damages are sustained.").  As a result, Bisaria's tortious interference claim fails as a matter of New York law.

## B.     **The Complaint Should Be Dismissed Due to Improper Venue.**

63.     Venue is not proper in the Southern District of Florida.

64.     Pursuant to Section 1391 of title 28, United States Code:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial

> district in which any defendant is subject to personal jurisdiction at the
> time the action is commenced, if there is no district in which the action
> may otherwise be brought.

28 U.S.C. § 1391(a).

65.     Hilton is a Delaware LLC, with its corporate citizenship based in Virginia.

See Compl. at ¶ 2.  Black Rock is a New York corporation.  See Compl. at ¶ 3.  Reed Smith is a

Delaware LLP.  See Compl. at ¶ 4.  Accordingly, Section 1391(1) does not create venue in the

Southern District of Florida.

66.     Bisaria alleges, in conclusory fashion, that "[v]enue is proper herein as the alleged

breaches articulated occurred in the Southern District of Florida."  See Compl. at ¶ 6.  The

remainder of the Complaint, and the documents upon which Bisaria relies, however, refute that

assertion.

67.     The property that is the subject to the action, the Hotel, is located in Pittsburgh.

See Compl. at ¶ 7, p. 2.  Notwithstanding Bisaria's contentions, the parties' actions or omissions

took place somewhere other than the Southern District of Florida.  For example, the property

renovations occurred in Pittsburgh.  See Compl. at ¶ 18, p. 5.  Hilton and Black Rock are alleged

to have "conspired to defeat Shubh Pittsburgh's operations and success."  See Compl. at ¶ 19,

p. 5.  Those "operations" took place in Pittsburgh.  Any alleged conspiracy did not take place in

Florida as neither Black Rock nor Hilton is a Florida entity.  See Compl. at ¶¶ 2-3, p. 2.

68.     The Stipulated Order was entered into in state court in Allegheny County

(Pittsburgh, PA).  See Compl. at ¶ 3.  Hilton's meeting with Bisaria took place in Washington,

D.C.  See Compl. at ¶ 35.

69.     Therefore, a substantial part of the events or omissions giving rise to the claim did not occur in the Southern District of Florida.  Nor is a substantial part of property (the Hotel, in Pittsburgh) that is the subject of the action situated in the Southern District of Florida,

70.     For the foregoing reasons, this Court should dismiss the Complaint because venue is improper.

## III.   **CONCLUSION**

71.     For the foregoing reasons, the Complaint should be dismissed with prejudice because Bisaria lacks standing to bring it and because it fails to state a claim on which relief may be granted.  In addition, venue is improper in the Southern District of Florida.[7]

---

[7] To the extent that the Complaint is not dismissed in the entirety, Black Rock reserves the right to seek to transfer venue pursuant to 28 U.S.C. § 1404 or otherwise.  Black Rock also intends to file a motion to strike Bisaria's demand for a jury trial.  Black Rock reserves all of its other rights and remedies.

Dated:  November 10, 2010                    Respectfully submitted,


                                    By:     /s/ Dean A. Morande
                                            Thomas A. Dye (FL Bar No. 335207)
                                            Dean A. Morande (FL Bar No. 807001)
                                            CARLTON FIELDS
                                            CityPlace Tower
                                            525 Okeechobee Boulevard, Suite 1200
                                            West Palm Beach, Florida  33401-6350
                                            Phone: 561.659.7070
                                            Facsimile: 561.659.7368
                                            E-mail: tadye@carltonfields.com
                                                    dmorande@carltonfields.com

                                               – and –

                                            Robert P. Simons (*Pro hac vice* admission pending)
                                            REED SMITH LLP
                                            225 Fifth Avenue
                                            Pittsburgh, PA 15222-2716
                                            Telephone: 412.288.3131
                                            Facsimile:  412.288.3063
                                            E-mail: rsimons@reedsmith.com

                                            Counsel for Black Rock Financial Management,
                                            Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 10, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Dean A. Morande
Dean A. Morande (FL Bar No. 807001)

## SERVICE LIST

*Bisaria v. HTL (Hilton) Existing Franchise Holding, LLC, etc., et al.*
Case No. 10-CV-81215 WPD
United States District Court, Southern District of Florida

Keith T. Grumer
kgrumer@grumerlaw.com
Grumer & Macaluso, P.A.
One East Broward Boulevard, Suite 1501
Fort Lauderdale, FL 33301
Telephone:  (954) 713-2700
Facsimile:  (954) 713-2713
Attorneys for Plaintiff, Atul Bisaria

*Served via transmission of Notices of*
*Electronic Filing generated by CM/ECF*